Schulte *v.* Yellow Cab Co. of Phila., Appellant.

Argued October 20, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*M. Randall Marston* and with him *Bernard J. O'Connell,* for appellant.

*Bryan A. Hermes* for appellee.

Opinion by Gawthrop, J., January 28, 1932:
Plaintiff claimed damages for personal injuries alleged to have resulted from the negligent operation

of one of defendant's taxicabs. The case was tried before a judge sitting without a jury, and a finding was rendered for plaintiff. From the judgment entered thereon defendant brought this appeal.

The accident happened in the City of Philadelphia shortly after 8 P. M. Plaintiff alighted from a train at the West Philadelphia Station of the Pennsylvania Railroad Company located on the north side of Market Street at a point opposite the mouth of Thirty-second Street, which runs into Market Street from the south but does not cross it. At this point Market Street is sixty feet wide between curbs and has a twenty foot sidewalk on the north side. In the center of the street there is a double track street railway. A double track elevated electric railway, supported by pillars, runs along the middle of the street at this point. After plaintiff alighted from the train he walked from the station to a point on the sidewalk at the north curb line of Market Street. Immediately east of this point the pavement is crossed by a driveway running from Market Street into the station property. The width of this driveway is twenty-seven feet six inches. Plaintiff testified that he knew that immediately in front of him, along the north rail of the westbound trolley track, there was a safety zone rope supported by standards, the purpose of which is to prevent vehicles from crossing the trolley tracks at that point; that the mouth of Thirty-second Street was about seventy-five feet to the west; that the westbound traffic used the north side of Market Street; that when he got to the curb line and was ready to cross Market Street he looked to the west and to the east; that he saw a yellow taxicab standing along the north curb line of Market Street at a point just east of the driveway above described, but that he saw no moving vehicle; that he could see twenty-five or thirty feet "down the cartway past the cab east on Market Street;" that his intention was to cross Market Street;

that the place was well lighted; that he "kept on watching all the time" as he moved out toward the safety zone standard and, when he had walked about ten feet, or half way between the curb and the trolley track, he heard a noise like that which is caused by the application of brakes and saw the taxicab, which struck him, five or six feet to his left. He testified also that the taxicab moved five or six feet after it struck him. When he was asked why he did not see the taxicab until it was within five or six feet of him, if he was watching at the time, he answered: "Unless it came out under the L ...... I didn't see anything, didn't see where he came from, because he was on me before I knew where he was coming from."

The driver of the taxicab testified that as he passed a line of taxicabs which were standing along the north curb of Market Street just east of the driveway leading to the railroad station, and when he was moving at a speed of ten or fifteen miles an hour, he suddenly saw defendant move up in front of him and put out his hand.

Appellant urges that it was entitled to binding instructions at the trial or judgment n. o. v. on two grounds, first, because the evidence, viewed in the light most favorable to plaintiff, fails to establish defendant's negligence, and second, because it discloses that plaintiff was guilty of contributory negligence as matter of law.

The question whether the evidence warrants a finding that defendant was negligent is a close one. It is a fact, as asserted in behalf of appellant, that there was no evidence that the taxicab was being operated at an excessive speed. But, aside from the question of speed, the question arises whether plaintiff was in full view of defendant's chauffeur for such a time sufficiently long to have made it possible for him to avoid striking plaintiff. There may be negligence in failing to have the motor vehicle under proper control

134

without excessive speed: Anderson v. Wood, 264 Pa. 98. For a motor vehicle to run down a pedestrian, who is in full view for a time sufficiently long to permit the driver to avoid striking him, and who does not suddenly change his course, is evidence of negligence: Rankin v. Ward Baking Co., 272 Pa. 108. The fact that the accident occurred in the middle of the block is not decisive, because a pedestrian may lawfully cross a street at any point (Lowers v. Zuker, 102 Pa. Superior Ct. 581; Anderson v. Wood, supra); although he runs a greater risk when he makes the crossing at a place other than at an established crossing. After full consideration our conclusion is that the questions whether defendant's chauffeur had the car under proper control, and whether he gave the attention which the situation demanded, were factual.

But we are thoroughly convinced the plaintiff's testimony discloses a clear case of contributory negligence. The only testimony in the case as to where the taxicab came from is that it was always on the north cartway of Market Street. It was not even suggested that its headlights were not lit. Plaintiff testified that the locality was well lighted. The only rational conclusion is that if he was looking as he says he was he could have seen the taxicab and avoided the accident, whether it approached from the north cartway of the street, or turned into that cartway from the westbound trolley track as plaintiff suggested it might have done. It is vain for him to say that he was looking all the time but did not see the taxicab, when, if he were looking, he must have seen it. There was nothing to obstruct his view. As stated above, he said that when he was standing on the sidewalk he could see twenty-five or thirty feet down the northern cartway of Market Street past the standing cab. As he moved into the street his view would lengthen and yet he says that he then saw no moving vehicle until this slowly moving taxicab was almost upon him. It

was his duty to exercise a somewhat higher degree of care than would be necessary if he were crossing at a regular crossing place. The only rational conclusion from his own testimony is that he is mistaken when he says that he continued to look for approaching traffic, or that he stepped in front of the taxicab when it was almost upon him. His conduct in either case is contributory negligence and bars his recovery.

The judgment is reversed and here entered for defendant.